Filed 11/6/15  P. v. Snowden CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LYNN BOYD SNOWDEN,<br><br>    Defendant and Appellant. | F069484<br><br>(Super. Ct. No. F09905324)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Denise Lee Whitehead, James Petrucelli, Houry A. Sanderson and Brian Alvarez, Judges.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

*Before Levy, Acting P.J., Franson, J. and Peña, J.

## INTRODUCTION

Pursuant to a plea agreement, appellant Lynn Boyd Snowden pled no contest to one count of willful injury to a child, a violation of Penal Code[1] section 273a, subdivision (a), and admitted eight prior strike convictions. In exchange for his plea, two other charges were dismissed, there would be an eight-year "lid" on his sentence, and he would receive a one-day release to attend a funeral. Snowden was sentenced in accordance with the plea agreement. Snowden filed a notice of appeal and a certificate of probable cause was granted. Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Between August 20 and September 10, 2009, Lindsay F. brought her three-year-old son to Snowden's mobilehome. A report of child abuse was made to the police on September 10, 2009. The caller told police the child had been severely abused with a flyswatter and possibly other objects. The caller also advised that Lindsay F. and Snowden were attempting to reduce the bruising and swelling by applying cool water.

Police responded to Snowden's residence. Officers found the child in a diaper with severe bruising around his legs, arms, face, and torso. Police observed a loop pattern on the child's body, which later was determined to be from the metal handle of a flyswatter. Lindsay F. told police the child fell. When Snowden was out of earshot, however, she told officers Snowden hit the child with a flyswatter and stated, "'I didn't mean for this to happen.'"

When asked, Snowden denied striking the child. Police noted a flyswatter on the floor a few feet from Snowden. A few inches away from where Snowden had been seated was a glass pipe and methamphetamine.

An ambulance responded to treat the child's injuries. Paramedics determined the child needed to be transported to Valley Children's Hospital for treatment. Lindsay F.

---

[1]References to code sections are to the Penal Code unless otherwise specified.

and Snowden were transported to the police station. Child protective services assumed custody of the child on September 11, 2009.

After being advised of her rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Lindsay F. spoke with police. She stated she had been visiting Snowden "for years" and on September 6, 2009, she brought her son to Snowden and asked for assistance in "disciplining" the child. She described the child as stubborn and stated he had Sotos Syndrome, which often results in delayed development and mental retardation.

Lindsay F. told police that after arriving at Snowden's on September 6, she left the mobilehome for several hours, leaving the child with Snowden. When she returned, she observed fresh injuries on her son. Lindsay F. wanted to leave the mobilehome with her son, but Snowden did not want to allow the child to leave with her. Lindsay F. believed Snowden was afraid others would see the child's injuries and police would be called.

When Lindsay F. was asked why she did not call police during one of the many instances when she left the mobilehome after her child had been injured, Lindsay F. said she had a "history" with law enforcement. While she was speaking with officers, they determined Lindsay F. was under the influence of a controlled substance. Lindsay F. acknowledged using methamphetamine on September 9.

Snowden also was advised of his *Miranda* rights, which he waived. He told officers he didn't know who hit the child, but thought it might be the boy's father. Police informed Snowden the child's father was in custody awaiting deportation proceedings. Snowden again claimed he had not struck the child.

Police uncovered a witness who stated Lindsay F. often came to Snowden's mobilehome to use methamphetamine and she frequently brought her son with her. The witness indicated Snowden often hit the child with the wire handle of a flyswatter and would curse loudly at the child. Lindsay F. was present during one incident of abuse and appeared "ambivalent" to the abuse.

On October 14, 2009, Snowden was charged with corporal injury to a child, a violation of section 273d, subdivision (a); and possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). Snowden and Lindsay F. were jointly charged with violating section 273a, subdivision (a), willful harm or injury to a child. It also was alleged Snowden had suffered numerous prior serious felony convictions constituting strikes.

The public defender was appointed to represent Snowden and appeared at the arraignment. A motion to sever Snowden's trial from that of Lindsay F.'s was filed by Snowden on December 17, 2009. Lindsay F. pled no contest to the only charge filed against her, which rendered moot the motion to sever.

On February 18, 2010, Snowden moved for appointment of substitute counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. At the hearing, however, Snowden indicated he was obtaining private counsel. The trial court granted a continuance. On April 1, 2010, Snowden's second *Marsden* motion was heard and denied; Snowden exercised a peremptory challenge against the judge issuing the ruling.

On April 19, 2010, the case was before a different judge and Snowden again indicated he was planning to hire private counsel. On May 27, 2010, the public defender's office declared a conflict and the Alternate Defense Office (ADO) was appointed to represent Snowden. On July 1, 2010, Snowden's *Marsden* motion against the ADO was denied.

On July 8, 2010, Snowden's motion to proceed in propria persona was before the trial court. The trial court extensively questioned Snowden about his knowledge of basic criminal processes, legal terminology, knowledge of the charges against him, and the potential sentence he faced. The trial court also notified Snowden the court would not be able to give him legal advice. The motion to proceed in propria persona was granted.

On October 27, 2011, the matter was before the court on Snowden's request to be released to attend a funeral. His request was denied.

4.

The case was before the trial court on August 15, 2012, at which time Snowden complained about the investigator appointed to assist with his case. This was the fourth investigator appointed. Snowden complained the motions the investigator tried to file on his behalf had been rejected by the clerk's office. During the ensuing exchange with the judge, Snowden accused the judge of being "prejudiced" because he was Black. The judge told Snowden he needed to follow the proper procedures and file "any motions" he believed to be appropriate.

The case was reassigned to yet another judge. The People and Snowden entered into a plea agreement on May 30, 2013, and Snowden signed a change of plea form. Pursuant to the agreement, Snowden would plead no contest to a violation of section 273a and admit eight prior strike convictions in exchange for an eight-year maximum sentence, dismissal of all other charges, and a one-day release to attend a funeral.

Snowden was advised of the consequences of entering a plea and of his constitutional rights, which he waived. Snowden stated no one had threatened him to get him to enter the plea, nor had anyone made any promises other than what was set forth in the plea agreement. Snowden and the People stipulated to a factual basis for the plea based upon the preliminary transcript and the police reports. The trial court accepted Snowden's plea and found it had been made freely and voluntarily. Snowden pled to the charge and admitted the eight prior strike convictions; the other charges were dismissed.

Before the hearing concluded, Snowden stated he was entering into this plea in order to go to his sister's funeral. Snowden then asked "if something would change, is there—can I withdraw my plea?" The trial court advised Snowden that there would have to "be a basis for that withdrawal of your plea." Snowden was reminded that if he did not return to custody at the end of the agreed-upon period, he would face a 12-year term in prison.

5.

When Snowden returned to jail from the funeral, he was found to be in possession of marijuana and a new case was filed against him. Snowden was allowed to represent himself in this new case.

Prior to sentencing, Snowden moved to withdraw his plea, claiming he had entered into it under duress. Snowden claimed he had to sign the plea agreement or he would not have been allowed to attend his sister's funeral. The trial court disagreed with Snowden's characterization and pointed out Snowden had submitted no evidence to support this assertion. The motion was denied without prejudice.

On January 28, 2014, Snowden filed a motion to withdraw his plea. Snowden asserted he had been feeling depressed over the loss of his sister, wanted to attend her funeral, and was told off the record by the trial court that he could have a 12-hour pass if he entered a plea.

At the February 24, 2014, hearing on the motion, Snowden asserted he should be allowed to withdraw his plea because evidence had not "been brought out in the case" and he was innocent. Snowden claimed to have entered the no contest plea only so he could attend the funeral. The People responded it was Snowden who had approached them about entering into a plea and including a temporary release.

The trial court considered whether there was clear and convincing evidence showing good cause to withdraw the plea, such as mistake, ignorance, inadvertence, or some other ground. The trial court found Snowden's plea was knowing, intelligent, and voluntary and denied the motion. The People moved to dismiss the new case on the marijuana possession and immediately proceed to sentencing. Over the People's objection, sentencing was continued.

At the continued sentencing hearing, Snowden raised multiple reasons why he should not be sentenced and indicated he wanted to refile his motion to withdraw his plea. The trial court offered to appoint counsel for Snowden. On April 1, 2014, the trial

court reappointed the ADO as counsel for Snowden, over Snowden's objection. Sentencing was continued to allow counsel time to prepare.

On May 6, 2014, Snowden asked to return to pro se status; the request was denied. On May 13, 2014, a motion to withdraw the plea was filed by Snowden's counsel.

At the May 16, 2014, sentencing hearing, Snowden appeared with counsel and withdrew the motion to withdraw the plea. A request to continue sentencing was denied. Snowden responded by stating he was firing his attorney and proceeding in propria persona. He also asked for another temporary release to attend another funeral.

The trial court noted Snowden's lengthy criminal history and the "alarming" injuries to the child, as demonstrated by photographs. The motion to dismiss the prior strikes was denied. The trial court denied the request for another temporary release and proceeded to sentence Snowden in accordance with the plea agreement. The trial court imposed the midterm of four years, doubled to eight, and awarded 854 days of conduct credit and 1,710 days of custody credit. Various fines and fees were imposed.

Counsel for Snowden filed a timely notice of appeal and requested a certificate of probable cause, which was granted.

## DISCUSSION

Appellate counsel filed a *Wende* brief on November 13, 2014. A letter was issued that same day, notifying Snowden of the right to submit a supplemental brief. Snowden submitted a supplemental brief, asserting he received no assistance from the public defender or investigators; the judges all were prejudiced against him; and he was not guilty.

Contrary to Snowden's assertions, the record reflects Snowden received assistance from multiple appointed investigators. In addition, Snowden affirmatively sought, and was granted, the right to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806. Multiple judges heard matters in Snowden's case, as he exercised peremptory challenges against judges whom he believed to be "prejudiced." As for guilt, at least one

7.

witness other than Lindsay F. had observed Snowden abusing the child by hitting the child with the metal handle of a flyswatter. In addition, Snowden stipulated to a factual basis for the plea.

The request for a certificate of probable cause sought to appeal the denial of the motion to withdraw the plea. Under section 1018, a plea may be withdrawn for good cause, such as mistake, ignorance, or any other factor overcoming the exercise of free judgment. (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) A trial court should grant a motion to withdraw a plea only upon a showing of good cause by clear and convincing evidence. (*Ibid.*) A trial court's denial of a motion to withdraw a plea will not be disturbed unless, in light of this standard of proof, the trial court has abused its discretion. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

There was no evidence presented of mistake or ignorance. As for Snowden's claim of duress, feeling pressured to enter into a plea does not constitute duress. (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.)

Both the People and Snowden are entitled to the benefit of their bargain, and both parties must abide by the plea agreement. (*People v. Panizzon* (1996) 13 Cal.4th 68, 80.) Snowden was sentenced in accordance with the plea agreement. The trial court did not err, or abuse its discretion, in denying the motion to set aside the plea agreement. (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146.)

After an independent review of the record, we find no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.